Ball, J.
The plaintiffs seek to enjoin the defendants from enforcing a 1913 Massachusetts law, G.L.c. 207, §11, that has the effect of preventing out-of-state gay couples from manying in Massachusetts. For the reasons set forth below, the plaintiffs’ motion is DENIED.
BACKGROUND
The plaintiffs are eight same-sex couples who live outside Massachusetts and who have been denied the right to marry in the Commonwealth by what the plaintiffs term the defendants’ selective enforcement of a 1913 discriminatory law, G.L.c. 207, §11. Five of the plaintiff couples have already been issued marriage licenses and had their marriages solemnized; the other three couples were denied marriage licenses pursuant to G.L.c. 207, §11. The plaintiffs, citing Goodridge v. Department of Public Health, 440 Mass. 309 (2003), contend that G.L.c. 207, §11 is unconstitutional as applied to same-sex couples because the Massachusetts Supreme Judicial Court has unequivocally declared that, under the liberty and equality provisions of the Massachusetts Constitution, the Commonwealth lacks any rational basis to deny same-sex couples the right to marry on the same terms as opposite-sex couples.
Before the court turns to the merits of the plaintiffs’ motion, a consideration of the Supreme Judicial Court’s decision in Goodridge is instructive. In Goodridge, the court declared that “barring an individual from the protections, benefits, and obligations of civil marriage solely because that person would marry a person of the same sex violates the Massachusetts Constitution.” Id. at 344. The Goodridge plaintiffs were fourteen individuals from five Massachusetts counties who were denied marriage licenses by town or city clerks. Each of the plaintiff couples attempted to obtain marriage licenses as required under G.L.c. 207, completing Notices of Intention to Marry (pursuant to G.L.c. 207, §20) and presenting these forms together with the required health forms and marriage license fees (pursuant to G.L.c. 207, §19) to the clerks. “In each case, the clerk either refused to accept the notices of intention to marry or denied a marriage license to the couple on the ground that Massachusetts does not recognize same-sex marriage. Because obtaining a marriage license is a necessary prerequisite to civil marriage in Massachusetts, denying marriage licenses to the plaintiffs was tantamount to denying them access to civil marriage itself, with its appurtenant social and legal protections, benefits, and obligations.” Id. at 315.
The court stated that G.L.c. 207, the marriage licensing statute, is both a gatekeeping and a public records statute which controls entry into civil marriage. Id. at 317. The gatekeeping provisions of the statute are minimal, for example the statute forbids marriage between individuals within certain degrees of consanguinity, polygamous marriages, or if one party has communicable syphilis. However, the record-keeping provisions of G.L.c. 207 are more extensive. Id. at317-18. Couples wishing to marry must file standard information forms and a medical certificate in the clerk’s office and pay a fee. G.L.c. 207, §§19, 20, 28A. The clerk issues the license and when the marriage is solemnized, the individual authorized to solemnize the marriage adds additional information to the form and returns a copy to the clerk’s office, who in turn sends a copy of the information to the registrar. This information becomes a public record. Id. at 318.
Nothing in G.L.c. 207 specifically prohibits marriage between persons of the same sex. However, the definition of “marriage,” “(t]he legal union of a man and a woman as husband and wife,”[3] derives from the common law. Id. at 319. “Far from being ambiguous, the undefined word ‘marriage,’ as used in G.L.c. 207, confirms the General Court’s intent to hew to the term’s common-law and quotidian meaning concerning the genders of the marriage partners.” Id. Further, Sections 1 and 2 of G.L.c. 207 prohibit marriage between a man and certain female relatives and a *205 woman and certain male relatives, “but are silent as to the consanguinity of male-male or female-female marriage applicants. The only reasonable explanation is that the Legislature did not intend that same-sex couples be licensed to marry.” Id. The Goodridge Court determined that “G.L.c. 207 may not be construed to permit same-sex couples to many.” Id. at 320. The court then proceeded to determine that the law offends the Massachusetts Constitution’s guarantees of equality before the law, and the liberty and due process provisions of the Massachusetts. Constitution which secures the plaintiffs’ right to many their chosen partner. Id. at 327-28, citing to Perez v. Sharp, 32 Cal.2d 711, 728 (1948) (holding that a legislative prohibition against interracial marriage violated the due process and equality guarantees of the Fourteenth Amendment), and Loving v. Virginia, 388 U.S. 1 (1967) (same). The court concluded that “history must yield to a more fully developed understanding of the invidious quality of discrimination.” Id. at 328.
In sum, the majority in Goodridge decided that
[w]e construe civil marriage to mean the voluntary union of two persons as spouses, to the exclusion of all others. This reformulation redresses the plaintiffs’ constitutional injury and furthers the aim of marriage to promote stable, exclusive relationships. It advances the two legitimate State interests the department has identified: providing a stable setting for child rearing and conserving State resources. It leaves intact the Legislature’s broad discretion to regulate marriage."
Id. at 343-44 (emphasis added). The court added that:
No religious ceremony has ever been required to validate a Massachusetts marriage ... In a real sense, there are three partners to eveiy civil marriage: two willing spouses and an approving State. See DeMatteo v. DeMatteo, 436 Mass. 18, 31, (2002) (“Marriage is not a mere contract between two parties but a legal status from which certain rights and obligations arise”); Smith v. Smith, 171 Mass. 404, 409, 50 N.E. 933 (1898) (on marriage, the parties “assume! 1 new relations to each other and to the State”). See also French v. McAnarney, 290 Mass. 544, 546, 195 N.E. 714 (1935). While only the parties can mutually assent to marriage, the terms of the marriage — who may many and what obligations, benefits, and liabilities attach to civil marriage — are set by the Commonwealth. Conversely, while only the parties can agree to end the marriage (absent the death of one of them or a marriage void ab initio), the Commonwealth defines the exit terms. See G.L.c. 208.
Id. at 321.
We also reject the argument suggested by the department, and elaborated by some amici, that expanding the institution of civil marriage in Massachusetts to include same-sex couples will lead to interstate conflict. We would not presume to dictate how another State should respond to today’s decision. But neither should considerations of comity prevent us from according Massachusetts residents the full measure of protection available under the Massachusetts Constitution. The genius of our Federal system is that each State’s Constitution has vitality specific to its own traditions, and that, subject to the minimum requirements of the Fourteenth Amendment, each State is free to address difficult issues of individual liberty in the manner its own Constitution demands.
Id. at 340-41 (emphasis added).
In his concurrence, Justice Greaney, referring to the provisions of the law at issue here, stated: “[t]he argument, made by some in the case, that legalization of same-sex marriage in Massachusetts will be used by persons in other States as a tool to obtain recognition of a marriage in their State that is otherwise unlawful, is precluded by the provisions of G.L.c. 207, §§11, 12, and 13.” Id. at 348, n.4.

Senate Bill No. 2175, an Act Relative to Civil Unions

Following the court’s decision in Goodridge, the Massachusetts Senate transmitted the following question to the Supreme Judicial Court:
Does Senate, No. 2175, which prohibits same-sex couples from entering into marriage but allows them to form civil unions with all “benefits, protections, rights and responsibilities” of marriage, comply with the equal protection and due process requirements of the Constitution of the Commonwealth and articles 1, 6, 7, 10, 12 and 16 of the Declaration of Rights?
Opinion of the Justices to the Senate, 440 Mass 1201, 1202 (2004). The Justices responded that in Goodridge, “the court preserved the marriage licensing statute, but refined the common-law definition of civil marriage to mean ‘the voluntary union of two persons as spouses, to the exclusion of all others.’ ” Id. at 1204, quoting Goodridge, 440 Mass. at 343 (emphasis added). The Justices answered the Senate in the negative, reasoning that “[preserving the institution of civil marriage is of course a legislative priority of the highest order, and one to which the Justices accord the General Court the greatest deference . . . Yet the bill, as we read it, does nothing to ‘preserve’ the civil marriage law, only its constitutional infirmity.” Id. at 1206. “Segregating same-sex unions from opposite-sex unions cannot possibly be held rationally to advance or ‘preserve’ what we stated in Goodridge were the Commonwealth’s legitimate interests in procreation, child rearing, and the conservation of resources.” Id., citing Goodridge, 440 Mass. at 341.
The Justices repeated that the separate opinion (of Justice Sosman) maintains that, because same-sex civil marriage is not recognized under Federal law *206 and the law of many States, there is a rational basis for the Commonwealth to distinguish same-sex from opposite-sex “spouses.” Post at 1213. There is nothing in the bill, including its careful and comprehensive findings ... to suggest that the rationale for the bill’s distinct nomenclature was chosen out of deference to other jurisdictions . . . “Our concern,” as the court stated in Goodridge, “is with the Massachusetts Constitution as a charter of governance for every person properly within its reach.”
We are well aware that current Federal law prohibits recognition by the Federal government of the validity of same-sex marriages legally entered into in any State, and that it permits other States to refuse to recognize the validity of such marriages . . . That such prejudice exists is not a reason to insist on less than the Constitution requires. We do not abrogate the fullest measure of protection to which residents of the Commonwealth are entitled under the Massachusetts Constitution. Indeed, we would do a grave disservice to every Massachusetts resident, and to our constitutional duly to interpret the law, to conclude that the strong protection of individual rights guaranteed by the Massachusetts Constitution should not be available to their fullest extent in the Commonwealth because those rights may not be acknowledged elsewhere. We do not resolve, nor would we attempt to, the consequences of our holding in other jurisdictions . .. But, as the court held in Goodridge, under our Federal system of dual sovereignly, and subject to the minimum requirements of the Fourteenth Amendment to the United States Constitution, “each State is free to address difficult issues of individual liberty in the manner its own Constitution demands.” Id. at 341.
Id. at 1208-09 (emphasis added).

G.L.C. 207

As noted, chapter 207 of the General Laws governs the issuance of marriage licenses. A couple wishing to marry in Massachusetts must first file a Notice of Intention of Marriage in any city or town hall in the Commonwealth. G.L.c. 207, §19. “Before issuing a license to marry a person who resides and intends to continue to reside in another state, the officer having authority to issue the license shall satisfy himself, by requiring affidavits or otherwise, that such person is not prohibited from intermarrying by the laws of the jurisdiction where he or she resides.” G.L.c. 207, §12. The chapter further provides that: “Any official issuing a certificate of notice of intention of marriage knowing that the parties are prohibited by section eleven from intermarrying, and any person authorized to solemnize marriage who shall solemnize a marriage knowing that the parties are so prohibited, shall be punished by a fine of not less than one hundred or more than five hundred dollars or by imprisonment for not more than one year, or both.” G.L.c. 207, §50.
The relevant section in the instant case provides: “No marriage shall be contracted in this commonwealth by a party residing and intending to continue to reside in another jurisdiction if such marriage would be void if contracted in such other jurisdiction, and eveiy marriage contracted in this commonwealth in violation hereof shall be null and void.” G.L.c. 207, §11. Just prior to the issuance of marriage licenses to same-sex couples in accordance with the ruling in Goodridge v. Department of Public Health, 440 Mass. 309 (2003), the defendants, the Department of Public Health (DPH) and the Registry of Vital Records and Statistics (Registry) issued forms and guidance that effectively interpret G.L.c. 207, § 11 to bar municipal clerks from issuing marriage licenses to same-sex couples who reside in any other state.
The defendants admit that prior to Goodridge taking effect, they placed a renewed emphasis on enforcement of Section 11. They claim that published reports that same-sex couples from other states intended to come to Massachusetts to marry led them to believe that violations of §§ 11 and 12 might occur. In response to Goodridge, the Registrar of Vital Records and Statistics (RVRS) changed the Notice of Intention form to eliminate references to “bride” and “groom,” and also to seek information about where out-of-state residents intended to live as well as information about other impediments that had not previously been requested on the form. The RVRS then conducted informational sessions for the clerks regarding the revised form and what to do with the new information. The defendants maintain that during those informational sessions, they stressed that equality is important so that all persons are treated equally regardless of their race, creed, age, or sexual orientation. Further, the defendants informed the clerks that they should decline to issue a marriage license if, based on comparing factual information on the Notice of Intention with the list of legal impediments furnished by RVRS, there is a legal impediment to that person marrying in Massachusetts or his or her home state. They instructed the clerks to do so for all impediments, including whether the impediment is based on age, consanguinity or affiniiy, marital status, or same gender status of couples who reside and intend to continue to reside in other states. Clerks were instructed to do so for all couples and all impediments, not just for same-sex couples.
The requirements of § 11 have now been included in the list of legal impediments to marriage sent to each clerk, which has been posted in the clerk’s office pursuant to G.L.c. 207, §37. Additionally, the clerks were specifically instructed that they refer the couples to the Impediments to Marriage poster and explain completely that the oath is legally binding. The clerks were informed that when couples indicate on the Notice of Intention that they do not reside in Massachusetts and do not intend to reside in Massachusetts, the clerk should present the couple with the list of legal impediments to marriage in Massachusetts and in *207 their home state which was to be furnished by RVRS pursuant to G.L.c. 207, §37. The RVRS sent a guide to the legal impediments to marriage in the fifty states, the District of Columbia, and the United States territories to each clerk.
Published reports indicated that clerks in Province-town, Somerville, Springfield, and Worcester were accepting Notices of Intention, and were issuing marriage licenses to same-sex couples who had indicated on their Notices of Intention that they lived in jurisdictions other than Massachusetts,' without regard to whether marriage between persons of the same sex is void or prohibited in those jurisdictions. Acting on the Registrar’s behalf, the Office of the Governor’s Legal Counsel asked those clerks to send for review all Notices of Intention and Certificates of Marriage from May 17, 2004 through the date of the request. The Office of the Attorney General then wrote to the respective counsel for those cities and towns that the actions of their clerks “raise significant questions under G.L.c. 207, §§11 and/or 12, and, before we institute enforcement action, we write to request your immediate explanation of how these actions may be reconciled with those statutes.”[4] The letter explained in detail the governing law as interpreted by the Registrar and concluded: “until we receive a satisfactory explanation, we ask that you advise your clerk’s office to cease and desist from such actions.”

History of Chapter 207, Section 11

The parties hotly dispute the purpose and historical origins of the enactment of Section 11. The plaintiffs maintain that the legislative history of the law makes clear that the law was passed in a retrograde move against interracial marriage. They claim that the 1913 law, which declares void any marriage in the Commonwealth if such a marriage is not permitted in a member of the couple’s home state, was specifically designed to stop interracial couples from out of the state from marrying in Massachusetts. Interracial couples could legally many in Massachusetts since 1830 when the Commonwealth struck down its own anti-miscegenation law. However anti-miscegenation laws remained on the books in many other states until a 1967 United States Supreme Court case declared them all unconstitutional.[5]
The defendants counter that the 1913 law, now G.L.c. 207, §§10-13, 50, identified as “a bill embodying the uniform law on marriage outside the State in evasion of the law of the domicile,” was passed without opposition, enacted by the Legislature and approved by the governor.[6] The defendants set forth credible evidence that the original goal of the drafters was to prevent evasion of existing divorce laws, not the limitation of interracial marriages. It is undisputed that Massachusetts had repealed its anti-miscegenation laws in the 1830s, and the lack of opposition to the 1913 law lends some credence to the defendants’ claim.

The Plaintiffs’ Case

In the instant case, eight same-sex couples who reside outside Massachusetts, claim that their constitutional right to marry in Massachusetts is being violated by the defendants’ enforcement of G.L.c. 207, §11. They maintain that the defendants are selectively enforcing this law to bar only same-sex marriages, and even if the defendants “were to somehow concoct” a rational basis for its enforcement, Section 1 l’s distinction between the marital rights of residents and nonresidents runs afoul of the Privileges and Immunities Clause of the United States Constitution (U.S. Const, art. IV, §2). The plaintiffs profess that the Commonwealth must satisfy the heightened scrutiny requirements triggered by the Clause, and maintain that the Commonwealth lacks a substantial justification for its discrimination and cannot demonstrate a substantial relationship between its discrimination and its purported justifications for Section 1 l’s application here. The plaintiffs claim that they are being irreparably harmed by the denial of their constitutional rights, seek a declaration that Section 11 is unconstitutional as applied to them, a preliminary order barring the Department from enforcing Section 11 with respect to same-sex couples, and directing it to process and index marriage applications and licenses from nonresident same-sex couples in the ordinary course, and such other relief that the court deems just and proper.
DISCUSSION
Under the established test set forth in Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609 (1980), a preliminary injunction is warranted when a plaintiff demonstrates “(1) a likelihood of success on the merits: (2) that irreparable harm will result from denial of the injunction: and (3) that, in light of the [moving party’s] likelihood of success on the merits, the risk of irreparable harm to the [moving party] outweighs the potential harm to the [nonmoving party] in granting the injunction." Loyal Order of Moose, Inc., Yarmouth Lodge #2270 v. Bd. of Health of Yarmouth, 439 Mass. 597, 601 (2003), citing Packaging Industries Group, Inc., 380 Mass. at 616-17. “When a party seeks to enjoin governmental action, a judge is also ‘required to determine that the requested order promotes the public interest, or, alternatively, that the equitable relief will not adversely affect the public.’ ” Id., quoting Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1984). Because the plaintiffs here have failed to demonstrate a likelihood of prevailing on the merits, the court finds that a preliminary injunction is not warranted in this case.

Threshold Issue: Standing

As a preliminary matter, the defendants maintain that the plaintiff couples lack standing to raise constitutional claims challenging G.L.c. 207, §11 because none of the couples reside in a state which declares marriage of same-sex couples “void,” but merely “prohibits it.” The defendants contend that whether a *208 marriage would be “void” if contracted in another state (for purposes of applying §11) is a separate question from whether it is “prohibited” by that other state’s laws (for purposes of applying §12).[7] The Registrar does not contend that §11 renders void any of the marriages of the five couples who have already received marriage licenses and had their marriages solemnized, nor does the Registrar contend that §11, as distinct from §12, bars issuance of marriage licenses to the three couples who were denied licenses. As explained by the defendants, the three unmarried couples reside in states which “merely” prohibit same-sex marriages, without declaring them void. Therefore, the defendants (initially) claimed that none of the couples have been injured by, and thus lacked standing to challenge §11. In their Sur-Reply Memorandum in Opposition to Clerks’ and Couples’ Motions for Preliminary Injunction, the defendants acknowledge that the plaintiffs, Michael Thorne and James Theberge of Maine, do have standing to challenge §11, which unlike §12, turns on whether a marriage would be void if contracted in Maine, the couple’s home state.[8]
In brief, it is the defendants’ position that §11 applies only to states where same-sex marriage is void and not those where it is merely prohibited. This court is not inclined to adopt the defendant’s discordant reading of §§11 and 12. It is well established that statutory language cannot be read in isolation; “when the meaning is ‘brought into question, a court properly should read other sections and should construe them together.’ ” Town of Milford v. Boyd, 434 Mass. 754, 759-60 (2001), citing Gillette Co. v. Commissioner of Revenue, 425 Mass. 670, 674 (1997), in turn quoting Polaroid Corp. v. Commissioner of Revenue, 393 Mass. 490, 497 (1984) (stating that “words of a statute must be construed with other statutory language and the general statutory plan”). In other words, in order to be consistent with the statutory scheme as a whole of G.L.c. 207, it is necessary that §§11 and 12 be read together. See e.g., LeClair v. Norwell, 430 Mass. 328, 333 (1999) (concluding that we do not read statutory language in isolation).
The court concludes that the plaintiffs, by claiming that their constitutional rights to marry are being violated by selective enforcement of discriminatory laws, have established that they may be “persons who have themselves suffered, or who are in danger of suffering, legal harm.” Ginther v. Commissioner of Insurance, 427 Mass. 319, 322 (1998). See e.g. Constitutional First Amendment infringement cases: Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality opinion) (concluding that the “loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury”); Romero Feliciano v. Torres Gaztambide, 836 F.2d 1 (1st Cir. 1987) (holding that given the finding that a civil servant was likely to succeed on the merits of his First Amendment claim that he was demoted in violation of his associational rights, a finding of irreparable harm was not an abuse of discretion); 754 Orange Ave., Inc. v. West Haven, 761 F.2d 105, 112-13 (2d Cir. 1985) (concluding that a zoning ordinance’s likely infringement of the plaintiffs First Amendment rights constituted irreparable harm where the city’s threat to enforce the ordinance operated as a prior restraint on adult bookstores); T&D Video v. City of Revere, 423 Mass. 577, 582 (1996) (holding that plaintiffs necessarily demonstrated irreparable harm because they showed a substantial likelihood that their First Amendment rights had been infringed). See also, Wright & Miller, 11 Federal Practice & Procedure, §2948 (“When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessaiy”). Accordingly, the court finds that the plaintiffs have standing to bring this motion.
LIKELIHOOD OF SUCCESS ON THE MERITS
The plaintiffs, eight same-sex couples who reside in states other than Massachusetts, maintain that their constitutional rights to marry in Massachusetts are being violated by the defendants’ selective enforcement of discriminatory laws of other states under the guise of G.L.c. 207, §11. As noted, five of the plaintiff couples have already been issued marriage licenses and had their marriages solemnized; the other three couples were denied marriage licenses pursuant to G.L.c. 207, §11. The defendants maintain that, in the case of the couples who have already had their marriages solemnized, there is no imminent harm because the next ministerial step with respect to their Certificates of Marriage would not be taken until June 2005. As regards the other three couples who were denied marriage licenses, the defendants press the “void” versus “prohibited” distinction discussed above. They contend that the plaintiffs are challenging the wrong section of G.L.c. 207. The defendants claim that the proposed injunction barring the defendants from enforcing G.L.c. 207, §11 would not remedy the harm, because it is not §11, but the separate provisions of G.L.c. 207, §12, which the couples do not challenge, that bars the three couples from marrying. In brief, §11 voids marriages of out-of-state residents contracted in Massachusetts if such marriages would be void if contracted in their home state. Section 12 mandates that officers having the authority to issue marriage licenses must satisfy themselves by requiring affidavits that the out-of-state couples are not prohibited from marrying by the laws of their home states. Simply stated, the court finds it unnecessary to distinguish the plaintiffs’ claims under §11 and § 12 as it is established that they must be read together.

Constitutionality of G.L.c. 207, §§11, 12.

It is settled law that a “statute is presumed to be constitutional and every rational presumption in favor of the statute’s validity is made.” Pielech v. Massasoit Greyhound, Inc., 441 Mass. 188, 193 (2004), citing St. Germaine v. Pendergast, 416 Mass. 698, 703 (1993). *209 “The challenging party bears a heavy burden to demonstrate, beyond a reasonable doubt, that there are no conceivable grounds supporting its validity.” Id., citing, Leibovich v. Antonellis, 410 Mass. 568, 576 (1991). “A court is only to inquire whether the Legislature had the power to enact the statute and not whether the statute is wise or efficient.” Id., citing St. Germaine, 416 Mass. at 703; Leibovich, 410 Mass. at 576. In other words, those who challenge a statute face a heavy burden because the court must give credit to every rational presumption in favor of legislation. Accordingly, legislative enactments command judicial deference. See Citizens for Responsible Environmental Management v. Attleboro Mall, Inc., 400 Mass. 658, 669 (1987).
The Marriage Licensing Statute: G.L.c. 207
The Goodridge Court declared that “barring an individual from the protections, benefits, and obligations of civil marriage solely because that person would many a person of the same sex violates the Massachusetts Constitution.” 440 Mass. at 344. The court construed “civil marriage to mean the voluntary union of two persons as spouses, to the exclusion of all others.” Id. at 343. Significantly, the court added that “ [i]t leaves intact the Legislature’s broad discretion to regulate marriage.” Id. at 343-44.
The language of G.L.c. 207, §11 is clear. “No marriage shall be contracted in this commonwealth by a party residing and intending to continue to reside in another jurisdiction if such marriage would be void if contracted in such other jurisdiction, and every marriage contracted in this commonwealth in violation hereof shall be null and void.” In its discussion of G.L.c. 207, the majority in Goodridge reasoned that the statute is both a gatekeeping and a public records statute which controls entry into civil marriage. Id. at 317. The Goodridge Court made clear that it was deciding a discrete constitutional issue and had no intention of usurping the prerogative of the Legislature or rewriting the marriage statute.
Moreover, the majority in Goodridge carefully and repeatedly limited the reach of its decision to Massachusetts “residents” or “citizens.” “Our concern is with the Massachusetts Constitution as a charter of governance for every person properly within its reach” Id. at 312 (emphasis added). The court reasoned that “[w]e would not presume to dictate how another State should respond to today’s decision. But neither should considerations of comity prevent us from according Massachusetts residents the full measure of protection available under the Massachusetts Constitution.” Id. at 340-41. (Emphasis added). In his concurrence, Justice Greaney referring to the statute at issue here stated: “(t]he argument, made by some in the case, that legalization of same-sex marriage in Massachusetts will be used by persons in other States as a tool to obtain recognition of a marriage in their State that is otherwise unlawful, is precluded by the provisions of G.L.c. 207, §§11, 12, and 13.” Goodridge, 440 Mass. at 348, n.4.
The court reasoned that “(i]n a real sense, there are three partners to every civil marriage: two willing spouses and an approving State.” Goodridge, 440 Mass at 321. The Court added that marriage “advances the two legitimate State interests the department has identified: providing a stable setting for child rearing and conserving State resources. It leaves intact the Legislature’s broad discretion to regulate marriage.” Id. at 343-44 (emphasis added). Further, in Opinion of the Justices to the Senate, 440 Mass. 1201, 1208 (2004), the four-Justice majority wrote that:
We do not abrogate the fullest measure of protection to which residents of the Commonwealth are entitled under the Massachusetts Constitution. Indeed, we would do a grave disservice to every Massachusetts resident and to our constitutional duty to interpret the law, to conclude that the strong protection of individual rights guaranteed by the Massachusetts Constitution should not be available to their fullest extent in the Commonwealth because those rights may not be acknowledged elsewhere. We do not resolve, nor would we attempt to, the consequences of our holding in other jurisdictions . . . But, as the court held in Goodridge, under our Federal system of dual sovereignty, and subject to the minimum requirements of the Fourteenth Amendment to the United States Constitution, “each State is free to address difficult issues of individual liberty in the manner its own Constitution demands.”
Id. at 1208, quoting Goodridge, 440 Mass. at 341 (emphasis added).
The plaintiffs are right that same-sex couples should not be subjected to a different set of rules than are opposite-sex couples, and it does seem to this court that on its face G.L.c. 207, §11 violates the spirit of Goodridge, which held that the Massachusetts Declaration of Rights entitles gay and lesbian couples to equal treatment under the marriage laws of the Commonwealth. Moreover, the court finds troubling the timing of the resurrection of the implementation of § 11 immediately after the Supreme Judicial Court declared the prohibition against gay marriages unconstitutional.

Selective Enforcement

However, the plaintiffs have failed to show that same-sex couples are being subjected to a different set of rules than are opposite-sex couples; that is, they have failed to prove their selective enforcement claim. The provisions of G.L.c. 207, which provide for different treatment of out-of-state couples, apply equally to same-sex and opposite-sex couples. The clerks were instructed not to issue marriage licenses to all out-of-state couples if, based on comparing factual information on the Notice of Intention with the list of legal *210 impediments furnished by RVRS, there is a legal impediment to that person marrying in Massachusetts or his or her home state. The clerks were instructed to do so for all impediments, including whether the impediment is based on age, consanguinity or affinity, marital status, or same gender status of couples who reside and intend to continue to reside in other states. Clerks were instructed to do so for all couples and all impediments, not just for same-sex couples.
As mentioned above, the defendants acknowledge that their interest in enforcing Section 11 was triggered by the fallout from Goodridge. They were concerned that same-sex couples from other states intended to come to Massachusetts to marry in violation of §§11 and 12. They state that until the Supreme Judicial Court decided Goodridge, there was little reason to believe that couples would come to Massachusetts to avoid their home states’ marriage laws. The defendants insist that enforcement is evenhanded and same-sex couples are treated the same as opposite-sex couples. In their informational sessions, the clerks were told that: “consistency is important so that the law is consistently applied across the state and within each ciiy and town; equality is important so that all persons are treated equally regardless of their race, creed, age, or sexual orientation.”
The defendants state they are reviewing all Notices of Intention and Certificates, not just those filed by same-sex couples, from clerks’ offices which are accepting Notices and issuing marriage licenses to nonresidents. The defendants’ position is that ail couples must be shown the list of impediments to marriage for Massachusetts and any other state or jurisdiction in which they reside and intend to reside. If the factual information on the Notice of Intention form indicates that there is an impediment to marriage, then the clerk may not rely on the applicant’s statement that there is no impediment. “This is true regardless of the type of impediment involved, i.e., whether the impediment is based on age, consanguinity or affinity, marital status, or same-gender status of applicants who reside and intend to continue to reside in other states.”[9]
In sum, the plaintiffs have failed to establish that (1) they, compared with others similarly situated, were selectively treated; and that (2) such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of a constitutional right, or malicious or bad faith intent to injure a person. Daddario v. Cape Cod Commission, 56 Mass.App.Ct. 764, 773 (2002) (holding that denial of development permit to mine sand and gravel on thirty-two acres of property did not deny owner equal protection of laws), citing Rubinovitz v. Rogato, 60 F.3d 906, 909-10 (1st Cir. 1995). “Allegations of clear and intentional discrimination are required.” Id. See also Snowden v. Hughes, 321 U.S. 1, 8 (1944) (“[t]he unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination”).

Rational Relationship Test

It is settled law that “(a]bsent a showing that a statute burdens a suspect group or fundamental interest, it will be upheld as long as it is rationally related to the furtherance of a legitimate state interest.” Prudential Insurance Co. v. Commissioner of Revenue, 429 Mass. 560, 568 (1999). “Under this rational-basis review, the statute bears a strong presumption of validity, and the burden of proving the measure invalid rests with the party challenging it.” Id. The plaintiffs in the instant case have failed to establish that G.L.c. 207, § 11, a facially neutral and even-handedly-applied law, is not rationally serving a legitimate governmental interest.
Massachusetts has a legitimate interest in protecting the interests served by the Commonwealth’s creation and regulation of the marriage relationship with the requirement that there be an approving state ready to enforce marital rights and duties for the protection of the public, the spouses, and their children. Goodridge, 440 Mass. at 321-25. Thus, it is rational for the Commonwealth to require that in order to many here, persons must reside here or in a jurisdiction where their marriage is similarly recognized and regulated. Simply stated, a statute is presumed to be constitutional, and will not be invalidated where any set of facts reasonably may be conceived to justify it. Dickerson v. Attorney General, 396 Mass. 740, 743 (1986), and cases cited. Safeguarding the benefits, obligations, and protections of the parties, including the children, of a marriage that the Commonwealth has helped create, is a legitimate governmental objective. Accordingly, G.L.c. 207, §11 survives the rational basis test.
The court finds that the increased enforcement of G.L.c. 207, §11 was the result of the change in the law pursuant to Goodridge; the enforcement has been evenhanded, and the defendants have not discriminated against similarly-situated persons. In brief, the plaintiffs have failed to show that this facially neutral provision was impermissibly motivated or is being unconstitutionally enforced. Goodridge and the related Opinion of the Justices to the Senate, make clear that “barring an individual from the protections, benefits, and obligations of civil marriage solely because that person would marry a person of the same sex violates the Massachusetts Constitution.” Goodridge, 440 Mass. at 344. In neither case, however, did the court condone unfettered tampering with legislation presumed to be constitutional. Indeed, the Justices stressed, that “each State is free to address difficult issues of individual liberty in the manner its own Constitution demands.” Opinion of the Justices, 440 Mass. at 1208. The court specifically added that its *211 decision “leaves intact the Legislature’s broad discretion to regulate marriage.” Goodridge, 440 Mass. at 343-44. Simply stated, barring same-sex Massachusetts residents from marriage violates the Massachusetts Constitution. The Massachusetts evasion statute, which forbids out-of-state couples from traveling to Massachusetts in order to avoid the laws of their states, is presumed constitutional and is being evenhandedly applied.[10] The plaintiffs have not met their heavy burden of overcoming the presumption of constitutionality which attaches to the statute.

Privileges and Immunities Clause

The plaintiffs’ principal challenge is made under the Privileges and Immunities Clause of Art. 4, §2 of the United States Constitution, which provides that “The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.” The Clause “establishes a norm of comity . . . that is to prevail among the States with respect to their treatment of each other’s residents.” Matter of Jadd, 391 Mass. 227, 228 (1984) (holding that a Supreme Judicial Court Rule that an attorney seeking admission to the Massachusetts bar must be a resident of the Commonwealth violates the Privileges and Immunities Clause of the United States Constitution), quoting Hicklin v. Orbeck, 437 U.S. 518, 523-24 (1978) (holding that the Alaska hire law which requires that all oil and gas leases, easements or rights-of-way permits, et cetera contain requirement that qualified Alaska residents be hired in preference to nonresidents is unconstitutional as violative of the Privileges and Immunities Clause of the Constitution), citing Austin v. New Hampshire, 420 U.S. 656, 660-63 (1975) (finding New Hampshire Commuters Income Tax imposed on Maine residents employed in New Hampshire violated the Privileges and Immunities Clause). The purpose of the Clause is
to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned. It relieves them from the disabilities of alienage in other States; it inhibits discriminating legislation against them by other States; it gives them the right of free ingress into other State and egress from them; it insures to them in other States the same freedom possessed by the citizens of those States in the acquisition and enjoyment of property and in the pursuit of happiness; and it secures to them in other States the equal protection of their laws. It has been justly said that no provision in the Constitution has tended so strongly to constitute the citizens of the United States one people as this.
Hicklin, 437 U.S. at 524, quoting Paul v. Virginia, 8 Wall 168, 180 (1869). “As Mr. Justice Cardoso observed in Baldwin v. G.A.F. Seelig, Inc., 294 U.S. 511, 523 (1935), the Constitution ‘was framed upon the theory that the peoples of the several states must sink or swim together, and that in the long run prosperity and salvation are in union and not division.’ ” Hicklin, 437 U.S. at 534.
“The clause does not identify those subjects as to which equality of treatment is required. ‘Only with respect to those ’’privileges" and “immunities” bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally.’ “ Matter of Jadd, 391 Mass. at 228-29, quoting Baldwin v. Montana Fish & Game Comm’n., 436 U.S. 371, 383 (1978). ’’These rights are referred to as ‘fundamental’ under the clause . . . There are some matters so related to State sovereignty that, even though they are important rights of a resident of a State, discrimination against a nonresident is permitted." Id. at 229, citing Dunn v. Blumstein, 405 U.S. 330, 343 (1972) (the right to vote in State elections); Baldwin, 436 U.S. at 383, and cases cited.
Determining whether G.L.c. 207, §11 violates the Privileges and immunities Clause involves a two-step analysis. The first question is whether the right at stake is “fundamental.” Massachusetts Council of Construction Employers, Inc. v. Mayor of Boston, 384 Mass. 466, 474 (1981), reversed on other grounds sub nom, White v. Massachusetts Council of Construction Employers, Inc., 460 U.S. 204 (1983). For purposes of the Privileges and Immunities Clause, “from the earliest incorporation of the notion of ‘fundamentalify,’ the clause has been thought to protect the ‘right of a citizen of one state to pass through, or reside in any other state, for purposes of trade, agriculture, professional pursuits, or otherwise.’ ” Massachusetts Council of Construction Employers, Inc., 384 Mass. at 475. For example compare Baldwin, 436 U.S. 371, which allowed out-of-state hunters to be charged a substantially higher licensing fee with Toomer v. Witsell, 334 U.S. 385 (1948), which negated a substantial differential in licensing fees for commercial shrimp fishing because the Baldwin Court recognized a constitutional difference between recreational activity and the pursuit of a livelihood. Massachusetts Council of Construction Employers, Inc., 384 Mass. at 475. Compare also, Ostrager v. State Bd. of Control, 99 Cal.App.3d 1, 5, 160 Cal.Rptr. 317 (1979) (holding that participation in a State compensation program for victims of crime was not fundamental), with State v. Nolfi, 141 N.J.Super. 528, 537-38, 358 A.2d 853 (1976) (determining that an out-of-state resident must be allowed to participate in a pretrial diversion program for criminal defendants). Id.
The second step of the analysis in determining whether G.L.c. 207, §11 violates the Privileges and Immunities Clause involves alternative scenarios. That is to say, the discrimination challenged may be justified in one of two circumstances. The plaintiffs here have focused on the first which is “if the right is found to be fundamental, the discrimination challenged may be justified if there is a showing that *212 nonresidents are a ‘peculiar source’ of an ‘evil’ that the Legislature is seeking to remedy.” Massachusetts Council of Construction Employers, Inc., 384 Mass. at 474, citing Hicklin, 437 U.S. at 525, in turn quoting Toomer, 334 U.S. at 398. There is an alternative justification for discrimination, however, and it is the one the court finds applicable here; differential treatment is countenanced when there is a valid justification for the distinction other than the mere fact of non-residency. Id., citing Hicklin. In other words, where the state interest is substantial, some measure of discrimination is permissible. Matter of Jadd, 391 Mass. at 229.
Significantly, the Goodridge Court, while making repeated analogies to cases involving fundamental rights and suspect classifications, did not adopt either predicate for strict scrutiny. Opinion of the Justices, 440 Mass. at 1220 (separate opinion of Justice Sosman), citing Goodridge, 440 Mass. at 359-61 (Sosman, J., dissenting). The majority in Goodridge employed the rational basis test in their determination that barring same-sex couples from marriage violates the Massachusetts Constitution. The Court specifically declined to consider whether sexual orientation is a suspect classification for purposes of equal protection analysis. Goodridge, 440 Mass. at 331, n.21. “Nor did Goodridge rely on the alternative claim that a ‘fundamental right’ was at stake, such that a ‘strict scrutiny’ analysis was to be applied.” Opinion of the Justices, 440 Mass. at 1220 (separate opinion of Justice Sosman), citing Goodridge, 440 Mass. at 330-31. “Rather, the court purported to apply a mere rational basis analysis, the extremely deferential test that is applied to any classification that does not impinge on fundamental rights or employ a suspect classification.” Id.
Accordingly, as to the first prong of the analysis here, the Goodridge Court declined to take a position as to whether sexual orientation is a suspect class and did not unequivocally state that a fundamental right was at stake. If marriage is not a fundamental right for purposes of an equal protection analysis, it follows that under the Privileges and Immunities Clause, individuals do not have a fundamental right to travel from other states to Massachusetts in order to marry.
Moreover, even if a fundamental right is at stake here, the plaintiffs’ Privileges and Immunities argument fails under the second prong since there is a valid justification for the distinction other than the mere fact of non-residency. As discussed above, the Commonwealth has a substantial interest in ensuring that the marriage relationship is regulated for the protection of the interests of the public, the spouses, and their children. See Goodridge, 440 Mass. at 342-43 (stating that “[eliminating civil marriage would be wholly inconsistent with the Legislature’s deep commitment to fostering stable families and would dismantle a vital organizing principle of our society”).
IRREPARABLE HARM
Although the court sympathizes with the plaintiffs, they have failed to show that the defendants acted unlawfully, so it is unnecessary to address the question of irreparable harm. Wilson v. Commissioner of Transitional Assistance, 441 Mass. 846, 858-59 (2004), citing Healey v. Commissioner of Public Welfare, 414 Mass. 18, 28 (1992) (holding that inevitable harm of limiting public resources does not trump lawful department action); Packaging Industries Group, Inc., 380 Mass. at 617 (concluding that “[w]hat matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits”).
ORDER
It is therefore ORDERED that the plaintiffs’ motion for the issuance of a preliminary injunction be DENIED.

 Goodridge, 440 Mass. at 319, quoting Black’s Law Dictionary 986 (7th ed. 1999).

 Exhibit 21 of Plaintiff Couples’ Motion for Preliminary Injunction, Letter dated May 21, 2004.

 Loving v. Virginia, 388 U.S. 1 (1967).

 Report of the Board of Commissioners for the Promotion of Uniformity of Legislation in the United States, 1913, Pub.doc. No. 86, at p.5 (1914).

 Section 11 of G.L.c. 207 provides: “No marriage shall be contracted in this commonwealth by a party residing and intending to continue to reside in another jurisdiction if such marriage would be void if contracted in such other jurisdiction, and every marriage contracted in this commonwealth in violation hereof shall be null and void.”
Section 12 of G.L.c. 207 provides: “Before issuing a license to marry a person who resides and intends to reside in another state, the officer having authoriiy to issue the license shall satisfy himself, by requiring affidavits or otherwise, that such person is not prohibited from intermarrying by the laws of the jurisdiction where he or she resides.” (Emphasis added).

 Section 751(1) of 19-A Me.Rev.Stat.Ann. declares “void” any marriage that is solemnized in Maine and that is prohibited by 19-A Me.Rev.Stat.Ann. §701 and §701(5), which expressly prohibit same-sex marriages from being contracted in Maine.

 Office of Attorney General’s response to the Springfield City Solicitor’s question: “Is the Attorney General ordenng the Spnngfield City Clerk to do something more than rely on that affirmation [of no impediments to marriage] when the applicant is a same-sex couple?”

 As the defendants maintain, “[f]ar from ‘fencing out’ such couples, §§11 and 12 allow such couples to marry here, if they move here.”