Connolly, Thomas E., J.
This matter is currently before the court on order from the Supreme Judicial Court of Massachusetts for a determination of whether same-sex marriage is prohibited in New York and Rhode Island. Cote-Whitacre v. Dep't of Pub. Health, 446 Mass. 350, 352 (2006) (rescript) (18 Mass. L. Rptr. 190). For the following reasons, this Court determines that same-sex marriage is prohibited in New York and is not prohibited in Rhode Island.

Background

The factual and procedural background is more fully set forth in Cote-Whitacre, 446 Mass. at 352-57 (Spina, J., concurring). In sum, however, eight same-sex couples desired to marry in Massachusetts following the Supreme Judicial Court’s decision in Goodridge v. Department of Public Health, 440 Mass. 309 (2003). The couples, who resided in Connecticut, Maine, New Hampshire, New York, Rhode Island, and Vermont, indicated on their Notices of Intention of Marriage that they intended to continue to reside outside Massachusetts after marrying. Three couples were refused Certificates of Intention of Marriage (commonly known as marriage licenses): Five couples, who received marriage licenses and had their marriages solemnized, were prevented from having their marriages registered in the Commonwealth.
In June 2004, the couples filed an action in Suffolk County challenging the application and construction of the statutes cited as authority for preventing nonresident same-sex couples from marrying in Massachusetts. The couples then filed a motion for a preliminary injunction seeking a declaratory judgment that G.L.c. 207, §11, was unconstitutional as applied to nonresident same-sex couples, a preliminary order enjoining enforcement of section 11 with respect to non-resident same-sex couples, and a preliminary order requiring the processing and indexing of non-resident same-sex couples marriage applications. Finding that the couples had failed to demonstrate a likelihood of success on the merits, a Superior Court Judge denied the motion. Cote-Whitacre v. Dep’t of Pub. Health, Civil No. 2004-2656, 2004 WL 2075557, at *6 (Mass.Super.Ct. Aug. 18, 2004) (Ball, J.).
After granting direct appellate review, the Supreme Judicial Court affirmed the denial of the motion for preliminary injunction. Cote-Whitacre, 446 Mass. at 352 (rescript). In addition, the court ordered that judgment enter in the Superior Court for the defendants as to the Connecticut, Maine, New Hampshire, and Vermont plaintiffs. Id. The court also ordered that the cases of the New York and Rhode Island plaintiffs proceed in the Superior Court “for a determination whether same-sex marriage is prohibited in those States.” Id
With this Court’s approval, the New York plaintiffs and the defendants jointly proposed that the question of whether same-sex marriage is prohibited in New York would be determined in accordance with the resolution of the then-pending cases on that question in the New York Court of Appeals. The Rhode Island plaintiffs and the defendants submitted memoranda to this Court regarding whether same-sex marriage is prohibited in Rhode Island.[3] On June 26, 2006, this Court heard oral argument from the Rhode Island plaintiffs and the defendants and took the matter under advisement.

Discussion

I. New York Plaintiffs

In July, the New York Court of Appeals decided the pending cases challenging the constitutionality of that State’s limitation of marriage to opposite-sex couples. The court affirmed the Appellate Division orders in each of the cases and held that New York’s “Domestic Relations Law’s limitation of marriage to opposite-sex couples is not unconstitutional.” Hernandez v. Robles, 2006 N.Y. Slip Op. 05239, at *10, 2006 WL 1835429 (N.Y. July 6, 2006). Accordingly, this Court determines that same-sex marriage is prohibited in New York.

II. Rhode Island Plaintiffs

The resolution of the question propounded by the Supreme Judicial Court in Cote-Whitacre as it applies to Rhode Island requires some discussion of that decision. The Cote-Whitacre decision consists of five different opinions: a rescript, Cote-Whitacre, 446 Mass. at 352 (re-script); a concurrence, id. at 352 (Spina, J., concurring, with whom Cowin and Sosman, JJ., join); a second concurrence, id at 382 (Marshall, C.J., concurring, with whom Cordy, J., joins, and Greaney, J., joins in part); a third concurrence, id at 393 (Greaney, J., concurring); and a dissent, id at 395 (Ireland, J., dissenting). The rescript represents an agreement by a majorily of the justices that the cases of the New York and Rhode Island plaintiffs should proceed in this Court for a determination of whether same-sex marriage is prohibited in those States. Id. at 352 (rescript). The court’s decision and order to this Court in that respect is clear. However, as none of the concurring opinions garnered a majority of *515 justices, “(t]here is some difficulty in determining the binding rule of law” that this Court must follow in carrying out the court’s order. Globe Newspaper Co. v. Super. Ct., 383 Mass. 838, 843 n.8 (1981), rev’d on other grounds, 457 U.S. 596 (1982).
The separate concurrences of the court evenly divide in construing G.L.c. 207, §§11 and 12.[4] Three justices, in the concurring opinion authored by Justice Spina, construe sections 11 and 12 to preclude a non-resident same-sex couple from marrying in Massachusetts where such marriage in the couple’s state of domicile is “expressly deemed ‘void,’ or because it is prohibited by constitutional amendment, by the common law, or by State statutory language to the effect that such marriage is not permitted, not recognized, not valid, or the like.” Cote-Whitacre, 446 Mass. at 363 (Spina, J., concurring). Furthermore, in the absence of existing appellate court decisions on the matter, Justice Spina views it as “necessary to look at the home State’s general body of common law and ascertain whether that common law has interpreted the term ‘marriage’ as the legal union of one man and one woman as husband and wife.” Id. at 363 n. 12. In contrast, three justices, in the concurring opinion authored by Chief Justice Marshall, construe sections 11 and 12 more narrowly. Id. at 387-88 (Marshall, C.J., concurring).[5] Under Chief Justice Marshall’s construction, section 11 bars marriages “where the relevant statutory language of the applicant’s home State explicitly provides that particular marriages are void,” id. (quotations omitted), and section 12 prohibits marriages that are “expressly forbidden by another State’s positive law — that is, by constitutional amendment, statute, or controlling appellate decision,” id. at 384-85. The court thus does not present a majority opinion as to the rule of law to be applied in determining whether same-sex marriage is prohibited in another state.
In Marks v. United States, the Supreme Court ruled that when a divided Court provides no majority rationale for its decision, “the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . .” 430 U.S. 188, 193 (1977) (quoting Gregg v. Georgia, 428 U.S. 153, 169 n.15 (1976) (opinion of Stewart, Powell, & Stevens, JJ.)); McClure v. Sec’y of the Commonwealth, 436 Mass. 614, 626 n.15 (2002).[6] On the issue of statutory construction, Chief Justice Marshall’s concurring opinion in Cote-Whitacre articulates the narrowest grounds for the judgment of the court. 446 Mass. at 387-88 (Marshall, C.J., concurring); see also id. at 397 n.3 (Ireland, J., dissenting) (noting that Chief Justice Marshall “disagree(s) only with Justice Spina’s overly broad construction of G.L.c. 207, §12”). Chief Justice Marshall construes G.L.c. 207, §12, to prohibit marriages that are “expressly forbidden by . . . constitutional amendment, statute, or controlling appellate decision.” Id. at 384-85 (Marshall, C.J., concurring). Justice Spina differs from Chief Justice Marshall only to the extent that he would construe section 12 more broadly in the absence of a controlling appellate court decision. Id. at 363 n. 12 (Spina, J., concurring). In essence, therefore, the “common denominator” of the court’s reasoning that embodies a “position implicitly approved” by a majority is that section 12 prohibits marriages expressly forbidden by another state’s positive law. See King v. Palmer, 950 F.2d 771, 781 (D.C.Cir. 1991) (discussing proper application of Marks rule); cf. United States v. Carrizales-Toledo, 454 F.3d 1142, 1151 (10th Cir. 2006) (noting inapplicability of Marks rule to “mutually exclusive” opinions). Chief Justice Marshall’s statutory construction, as the position of the court concurring in the judgment on the narrowest grounds, thus represents the holding of the court on that issue.
In addition, Chief Justice Marshall’s construction of G.L.c. 207, §§11 and 12, more closely adheres to the rules of statutory construction. “It is ... well settled that a statute in derogation of the common law should be strictly construed, so long as the construction is consistent with the statutory purpose.” Globe Newspaper Co. v. Super. Ct, 379 Mass. 846, 853 (1980), vacated, 449 U.S. 894 (1980); accord, Falmouth Ob-Gyn Assocs., Inc. v. Abisla, 417 Mass. 176, 179 (1994) (citing Corcoran v. S.S. Kresge Co., 313 Mass. 299, 303 (1943)). Massachusetts courts have long recognized the common-law rule that “the validity of a marriage depends upon the question whether it was valid where it was contracted; if valid there, it is valid everywhere.” Commonwealth v. Lane, 113 Mass. 458, 463 (1873); accord Medway v. Needham, 16 Mass. 157, 160 (1819). Marriage evasion statutes, like G.L.c. 207, §§11 and 12, are an exception to that common-law rule. Levy v. Downing, 213 Mass. 334, 335 (1913); see also Boura v. Haskell, 182 Misc. 307, 308 (N.Y.Sup.Ct., Special Term, 1943) (stating that “purpose” of Uniform Marriage Evasion Act was “to modify the common-law rule” by giving extraterritorial effect to statutory marriage prohibitions). The rules of statutory construction thus require strict construction of G.L.c. 207, §§11 and 12, as derogations of the common law, so long as that construction is consistent with the statutory purpose.
General Laws c. 207, §§11 and 12, “were first enacted by St. 1913, c. 360, as part of the Uniform Marriage Evasion Act.” Cote-Whiteacre, 446 Mass. at 353 (Spina, J., concurring). The Uniform Marriage Evasion Act was “intended to promote general uniformity in the prohibitory laws of every State.” Id. at 371 (Marshall, C.J., concurring). The Massachusetts Legislature specifically provided that sections 11 and 12 “be so interpreted and construed as to effectuate their general purpose to make uniform the law of those states which enact like legislation.” G.L.c. 207, §13. In order to effectuate the Legislature’s stated statutory purpose, sections 11 and 12 should thus be construed in accordance with the constructions given to the Uniform Marriage Evasion Act in the other states that *516 enacted the Act. See also Union Trust Co. v. McGinty, 212 Mass. 205, 208 (1912) (“In the interpretation of a statute widely adopted by the states to the end of securing uniformity ... we should be inclined to give great weight to harmonious decisions of courts of other states . . .”). Chief Justice Marshall’s construction of sections 11 and 12 accords with that given to the Uniform Marriage Evasion Act by courts in Illinois, Louisiana, Vermont and Wisconsin.[7] See, e.g., Boysen v. Boysen, 23 N.E.2d 231 (Ill.App.Ct. 1939); United States ex rel. Modianos v. Tuttle, 12 F.2d 927 (E.D.La. 1925); Wheelock v. Wheelock, 154 A. 665 (Vt. 1931); Lyannes v. Lyannes, 177 N.W. 683 (Wis. 1920). Therefore, by construing sections 11 and 12 strictly and in uniformily with the law in Illinois, Louisiana, Vermont, and Wisconsin, Chief Justice Marshall’s construction hews to the rules of statutory construction.
For the foregoing reasons, this Court will apply Chief Justice Marshall’s construction of G.L.c. 207, §§11 and 12, to determine whether same-sex marriage is prohibited in Rhode Island. Accordingly, this Court will find same-sex marriage is prohibited in Rhode Island if same-sex marriage is explicitly deemed void or otherwise expressly forbidden by a Rhode Island constitutional amendment, by a Rhode Island statute, or by a Rhode Island Supreme Court decision.
Upon consideration of the parties’ oral arguments and submitted memoranda, this Court determines that same-sex marriage is not prohibited in Rhode Island. No evidence was introduced before this Court of a constitutional amendment, statute, or controlling appellate decision from Rhode Island that explicitly deems void or otherwise expressly forbids same-sex marriage; and, after an exhaustive search, this Court has found no such prohibitory positive law. See also Cote-Whitacre, 446 Mass. at 363 n.12 (Spina, J., concurring) (noting that “same-sex marriage is not expressly prohibited by constitutional amendment, statute, or existing appellate court decision” in Rhode Island); cf. id. at 392 (Marshall, C.J., concurring) (stating that “it appears” that Rhode Island positive law does not expressly prohibit same-sex marriage); Andersen v. King County, 138 P.3d 963, 1011 (Wash. 2006) (listing Rhode Island as having “no law or constitutional amendment restricting marriage to one man and one woman”); Citizens for Equal Prot. v. Bruning, 368 F.Sup.2d 980, 999 n.16 (D.Neb. 2005) (noting that Rhode Island has “no explicit provisions that prohibit same-sex marriages”), rev’d on other grounds, 455 F.3d 859 (8th Cir. 2006).

ORDER

In response to the order of the Supreme Judicial Court in Cote-Whitacre v. Department of Public Health, 446 Mass. 350, 352 (2006) (rescript), it is therefore ORDERED that a declaratory judgment enter that same-sex marriage is prohibited in New York and is not prohibited in Rhode Island.

On May 30, 2006, this Court allowed the plaintiffs’ assented-to motion to file a Second Amended Verified Complaint. The only Rhode Island plaintiffs in the Second Amended Verified Complaint are Wendy Becker and Mary Norton.

General Laws c. 207, §11 (“Non-residents; marriages contrary to laws of domiciled state”), provides: “No marriage shall be contracted in this commonwealth by a party residing and intending to continue to reside in another jurisdiction if such marriage would be void if contracted in such other jurisdiction, and every marriage contracted in this commonwealth in violation hereof shall be null and void.” General Laws c. 207, §12 (“Legal ability of non-residents to marry; duty of licensing officer to ascertain”), provides: “Before issuing a license to marry a person who resides and intends to continue to reside in another state, the officer having authority to issue the license shall satisfy himself, by requiring affidavits or otherwise, that such person is not prohibited from intermarrying by the laws of the jurisdiction where he or she resides.”

Justice Greaney authored a separate concurring opinion, id. at 393 (Greaney, J., concurring), butjoinedinthe statutory construction part of Chief Justice Marshall’s concurring opinion, id. at 395.

Though Marks referred to divided Supreme Court decisions, nothing prohibits its application by state courts to state court decisions. See, e.g., Davidson v. Hensen, 954 P.2d 1327, 1335 (Wash. 1998) (applying Marks to determine holding of divided state supreme court decision); Morgan v. Ruleville, 627 So.2d 275, 278 (Miss. 1993) (same).

Only Illinois, Louisiana, Massachusetts, Vermont and Wisconsin “enacted, in full or in substance,” the Uniform Marriage Evasion Act. Handbook of the Nat'l Conference of Comm'rs on Uniform State Laws and Proceedings of the Fifty-Third Annual Conference, 147 (1943).